UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN J. TATAR,

                Plaintiff,            Civil Action No. 16-13117
                                                    Honorable Linda V. Parker
v.                                                 Magistrate Judge David R. Grand

UNITED STATES OF AMERICA,

                Defendant.
_____/

**REPORT AND RECOMMENDATION TO
GRANT DEFENDANT'S MOTION TO DISMISS [5]**

Before the Court is a Motion to Dismiss filed by Defendant United States of America ("Defendant") on October 28, 2016. (Doc. #5). On December 20, 2016, *pro se* Plaintiff John J. Tatar ("Tatar") filed a timely response to this motion (Doc. #10), and Defendant filed a reply on January 5, 2017 (Doc. #11). An Order of Reference was entered on October 28, 2016, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (Doc. #6).

Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss [**5**] be **GRANTED**.

**II.    REPORT**

    **A.    Factual Background**

        *1.    The Allegations in Tatar's Initial Filing*

Tatar commenced this action on August 29, 2016, by filing a 145-page "Complaint" that

consists primarily of a 114-page "memorandum" in which he contends that he cannot be taxed by the United States government. (Doc. #1). In that filing, Tatar seeks a refund of $230,278 for amounts the Internal Revenue Service ("IRS") levied from his retirement account and Social Security payments to pay Tatar's federal income tax liabilities for tax years 1996-2010. (Doc. #1-1 at 33). In addition, Tatar appears to seek an injunction and/or declaratory judgment deeming any levies or liens against his property invalid, and preventing the IRS from levying again in the future to collect the liabilities owed. (*Id.* at 31). In order to address the merits of Defendant's motion to dismiss, it is necessary to summarize the relevant facts pertaining to tax years 1996-2010.

2.     *Details Regarding Tax Years 1996-2010*[1]

Tatar filed his 1996 federal tax return on June 2, 1997. (Doc. #5-1 at 2). It appears that he claimed Adjusted Gross Income of $273,520.50, Taxable Income of $236,056.50, and a tax liability of $2,194. (*Id.*). A refund of $8,319.15 was issued to Tatar, which represented his withheld taxes of $10,513.15 less his claimed tax liability. (*Id.*). However, pursuant to an audit which was conducted about three years later, the IRS determined that Tatar owed $46,503 in additional income tax, $24,428.75 in interest, and $9,301 for an "accuracy penalty" for the 1996 tax year. (*Id.*). Beginning in May of 2008, the IRS began paying down Tatar's 1996 tax obligation via levies against funds he owned, and these levies were made periodically for approximately the next eight years. (*Id.* at 2, 6-18). During this period, additional fees, interest

---

[1] These facts are taken from exhibits attached to Defendant's motion to dismiss. All of the referenced documents are self-authenticating, admissible public records, and Tatar does not challenge their contents or authenticity. Here, where Defendant is arguing, in part, that Tatar's claims should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the court may consider facts or evidence relating to jurisdiction that are not alleged the complaint to "satisfy itself as to the existence of its power to hear the case"; doing so does not convert the motion to dismiss into a summary judgment motion. *Allstate Ins. Co. v. Renou*, 32 F. Supp. 3d 856, 860 (E.D. Mich. 2014) (internal quotations omitted).

and penalties were assessed against Tatar and added to his 1996 federal tax liability. (*Id.*). Documentation provided by Defendant establishes that other than Tatar's initial withholding, the only payments applied to his 1996 tax liability were made through levies and credits transferred from other tax periods (e.g., transfer of overpayments from later tax years in lieu of refunding those amounts to Tatar). (*Id.* at 2-3, 6-18). The levies continued until April 25, 2016, when Tatar's 1996 tax liabilities were fully paid.[2] (*Id.* at 18).

Tatar filed his 1997 tax return on August 10, 1998. (Doc. #5-2 at 2). That same day, a refund was issued for most of the amount withheld from his income. (*Id.*). The IRS assessed additional taxes, penalties, and interest between August 27, 2001, and August 27, 2012, though the amounts were significantly lower than those assessed with respect to Tatar's 1996 tax return.[3] (*Id.* at 2, 6-8). Levy payments were made for Tatar's 1997 tax liabilities from February 3, 2012, until July 30, 2012, when the liabilities were fully paid. (*Id.* at 6-8).

Tatar filed his 1998 tax return on May 7, 2001. (Doc. #5-3 at 2). On May 7, 2001, a refund was issued for most of Tatar's withheld taxes. (*Id.*). No further taxes or penalties were assessed, and no additional payments were ever made. (*Id.*).

Tatar filed his 1999 tax return on May 14, 2001. (Doc. #5-4 at 2). On May 14, 2001, a refund was issued for most of Tatar's withheld taxes. (*Id.*). No further taxes or penalties were assessed, and no additional payments were ever made. (*Id.*). On August 13, 2001, Tatar filed an amended 1999 tax return, which resulted in a larger refund than he had been issued; that

---

[2] The second levy payment on April 25, 2016, and the later levy payments that are reflected on the account transcript for Tatar's 1996 tax liabilities were all subsequently credited against Tatar's tax liabilities for tax years 2000 and 2002. (Doc. #5-1 at 18-19).

[3] Tatar does not contest the specific calculations that resulted in the imposition of the various taxes, interest and penalties discussed herein. Accordingly, the financial details of each and every year's tax returns are not material to the Court's resolution of Defendant's instant motion, and the Court will not delve into them further.

additional amount was credited to his 1996 tax liabilities. (*Id.*).

Tatar filed his 2000 tax return on September 2, 2002. (Doc. #5-5 at 2). The IRS assessed additional taxes, penalties, and interest between September 26, 2005, and October 28, 2013. (*Id.* at 2, 4, 6). Levy payments have been made since September 30, 2013, up until at least as recently as August 25, 2016. (*Id.* at 6-8). As of September 21, 2016, an assessed balance of $7,319.90 remained for Tatar's 2000 tax liabilities.[4] (*Id.* at 9).

For tax year 2001, Tatar filed a joint tax return with his wife on September 2, 2002. (Doc. #5-6 at 2). The IRS assessed additional taxes, penalties, and interest between September 2, 2002, and October 28, 2013. (*Id.* at 2-4; Doc. #5-7 at 1-3). On November 3, 2008, the IRS granted Tatar's wife innocent spouse relief so that she was no longer considered jointly liable for his 2001 tax liabilities. (Doc. #5-6 at 5; Doc. #5-7 at 2). As a result, the IRS transferred Tatar's 2001 tax liability to a separate account reflecting only his liability. (Doc. #5-6 at 6; Doc. #5-7 at 2). Payments in the form of credits to the account and levies were made between December 21, 2009, and July 24, 2015. (Doc. #5-7 at 2-3). On September 28, 2015, the IRS wrote off the unpaid balance of $24,070.31. (*Id.* at 3).

For tax year 2002, the IRS prepared a substitute-for-return for Tatar on November 14, 2005. (Doc. #5-8 at 2). The IRS assessed additional taxes, penalties, and interest between June 26, 2006, and October 28, 2013. (*Id.* at 2, 5). In addition to a small amount of withholding, limited levy payments were made in the first half of 2016. (*Id.*). The IRS wrote off the balance of $60,915.12 on June 27, 2016. (*Id.* at 6).

For tax year 2003, the IRS prepared a substitute-for-return for Tatar on November 14,

---

[4] According to Defendant, Tatar's total unpaid balance for this tax year is higher because the type of account transcript attached to its motion reflects only the *assessed* balance, and not accrued but as-yet-unassessed penalties and interest. (Doc. #5 at 13).

4

2005. (Doc. #5-9 at 2). The IRS assessed additional taxes, penalties, and interest between June 26, 2006, and October 28, 2013. (*Id.* at 2, 4-5). The only payment reflected was withholding on April 15, 2004. (*Id.* at 2). The IRS wrote off the balance of $60,682.55 on June 27, 2016. (*Id.* at 5).

For tax year 2004, the IRS prepared a substitute-for-return for Tatar on July 7, 2008. (Doc. #5-10 at 2). The IRS assessed additional taxes, penalties, and interest between February 9, 2009, and October 28, 2013. (*Id.* at 2, 4-5). The only payment reflected was withholding on April 15, 2005. (*Id.* at 2). As of September 21, 2016, an assessed balance of $47,640.07 remained on Tatar's 2004 tax liabilities. (*Id.* at 7).

For tax year 2005, the IRS prepared a substitute-for-return for Tatar on September 3, 2007. (Doc. #5-11 at 2). The IRS assessed additional taxes, penalties, and interest between September 1, 2008, and October 28, 2013. (*Id.* at 2-3, 5). The most recent payment was made via levy on April 4, 2013. (*Id.* at 4). As of September 21, 2016, an assessed balance of $25,662.66 remained on Tatar's 2005 tax liabilities. (*Id.* at 6).

For tax year 2006, the IRS prepared a substitute-for-return for Tatar on July 7, 2008. (Doc. #5-12 at 2). The IRS assessed additional taxes, penalties, and interest between February 9, 2009, and October 28, 2013. (*Id.* at 2, 4-5). The only payment reflected was withholding on April 15, 2007. (*Id.* at 2). As of September 21, 2016, an assessed balance of $23,478.77 remained on Tatar's 2006 tax liabilities. (*Id.* at 7).

For tax year 2007, on November 17, 2008, the IRS prepared a substitute-for-return for Tatar that determined he owed no taxes. (Doc. #5-13 at 2). No taxes were ever assessed for this tax year, and no payments were ever made. (*Id.*).

For tax year 2008, the IRS prepared a substitute-for-return for Tatar on October 25, 2010.

5

(Doc. #5-14 at 2). The IRS assessed additional taxes, penalties, and interest between November 28, 2011, and October 28, 2013. (*Id.* at 2-3). The only payment reflected was withholding on April 15, 2009. (*Id.* at 2). As of September 21, 2016, an assessed balance of $29,787.42 remained on Tatar's 2008 tax liabilities. (*Id.* at 5).

For tax year 2009, on September 26, 2011, the IRS prepared a substitute-for-return for Tatar that determined he owed no taxes. (Doc. #5-15 at 2). No taxes were ever assessed for this tax year, and the only payment ever made toward any tax liability for this year was credited to Tatar's 1996 tax liabilities. (*Id.*).

For tax year 2010, on May 14, 2012, the IRS prepared a substitute-for-return for Tatar that determined he owed no taxes. (Doc. #5-16 at 2). No taxes were ever assessed for this tax year, and no payments were ever made. (*Id.*).

**B.    Analysis**

In its motion, Defendant argues that dismissal of Tatar's complaint is appropriate for three reasons:  (1) the Court lacks subject matter jurisdiction to grant the injunctive or declaratory relief Tatar seeks in his complaint; (2) the Court lacks subject matter jurisdiction over Tatar's claims because he has failed to comply with the jurisdictional prerequisites of a refund suit for all but one of the tax periods at issue; and (3) as to any tax periods for which the jurisdictional prerequisites are even arguably met, Tatar's complaint fails to state a claim upon which relief can be granted. (Doc. #5). For the reasons set forth below, the Court finds merit to these arguments.

*1.    The Court Lacks Subject Matter Jurisdiction to Provide
the Injunctive and/or Declaratory Relief Tatar Seeks*

In its motion, Defendant first argues that Tatar's claims should be dismissed because this Court lacks subject matter jurisdiction to grant the declaratory and/or injunctive relief he seeks in

his complaint. (Doc. #5 at 16-19).

Federal Rule of Civil Procedure 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion." *1200 Sixth St., LLC v. United States ex rel. Gen. Servs. Admin.*, 848 F. Supp. 2d 767, 772 (E.D. Mich. 2012); *see also Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir. 1990) (holding that, in a refund suit, the taxpayer-plaintiff bears the burden of establishing jurisdictional facts).

Under settled sovereign immunity principles, "the United States, as sovereign, is immune from suit, save as it consents to be sued … and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Dalm*, 494 U.S. 596, 608 (1990) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)) (internal quotation marks omitted). Waivers of the United States' sovereign immunity are never implied; rather, to be effective, such waivers "must be 'unequivocally expressed.'" *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33-34 (1992) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990)). And, where Congress has provided a specific statutory waiver of sovereign immunity, the waiver "must be construed strictly in favor of the sovereign, … and not enlarge[d] … beyond what the language requires." *Id.* at 34 (internal citations and quotation marks omitted, bracket in original).

Against this legal backdrop, Defendant argues that, as to the injunctive and declaratory relief sought in Tatar's initial filing, "rather than waiving sovereign immunity, Congress specifically prohibited the type of suit brought by the plaintiff." (Doc. #5 at 17). Specifically, the Anti-Injunction Act provides – with limited exceptions inapplicable here – that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court

by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). The express purposes of the Anti-Injunction Act are "to withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes" and "to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 5-6 (1962).

Here, Tatar is clearly seeking to restrain the collection of tax liabilities. Indeed, in his complaint, Tatar requests that "any and all levies/liens that are presently in effect regarding the continued collection from third parties relating to moneys due myself and/or the encumbrances of any property relating to my possession, *be removed immediately and enjoined by Court Order to never be reissued in the future[.]*" (Doc. #1-1 at 31 (emphasis added)). The effect of this request, if granted, would be to enjoin the United States from collecting tax liabilities owed by Tatar, relief that is prohibited by the Anti-Injunction Act. *See Ecclesiastical Order of the ISM of AM, Inc. v. I.R.S.*, 725 F.2d 398, 401 (6th Cir. 1984) (affirming district court's conclusion that the Anti-Injunction Act barred an action "to enjoin [the] IRS, directly or indirectly, from collecting federal taxes").

Likewise, this Court is without jurisdiction to grant Tatar declaratory relief with respect to federal taxes. The Declaratory Judgment Act authorizes federal courts in most types of cases to "declare the rights and other legal relations" of interested parties. 28 U.S.C. § 2201(a). But, that statute explicitly carves out controversies "with respect to Federal taxes" from those in which a federal court can issue a declaratory judgment. *Id.*; *see also Dickens v. United States*, 671 F.2d 969, 972 (6th Cir. 1982). Courts have recognized that the Declaratory Judgment Act is

at least as broad as the Anti-Injunction Act, and it independently bars the declaratory relief sought by Tatar in this case. *See Ecclesiastical Order of the ISM of AM*, 725 F.2d at 401-02.

In response to Defendant's arguments, Tatar appears to argue that his claims are not barred by the Anti-Injunction Act and/or the Declaratory Judgment Act because the levies at issue were "fraudulently issued." (Doc. #10 at 12). Specifically, Tatar asserts:

> Plaintiff's Claim(s) for Refund does not seek an injunction against the collection of any properly issued levy and subsequently a properly collectable tax; Plaintiff recognizes that this is barred by the Anti-Injunction Act and Declaratory Judgment Act, however, these levies in question were improperly imposed upon this Plaintiff, therefore he is entitled to such relief – removal of all the levies.

(*Id.*). But, this argument lacks merit for a few reasons. First, it puts the cart before the horse by requiring the Court to determine the propriety of the taxes and levies in question before determining whether it has subject matter jurisdiction over the action. Second, Tatar cites no case law in support of the distinction he seeks to draw – namely, that, despite the plain language of the statutes discussed above, the Court has the authority to "issue an injunction of the collection of an *invalid* tax" (*Id.* at 13 (emphasis added)) – and the Court is aware of no such authority. Finally, as Defendant points out in its reply brief, this Court has previously rejected Tatar's attempts to obtain relief barred by the Anti-Injunction Act and Declaratory Judgment Act. (Doc. #11 at 2-3 (citing *Tatar v. Mayer*, 2013 WL 4777143, at *1-2 (E.D. Mich. Aug. 6, 2013) (denying, based on Anti-Injunction Act, Tatar's motion for preliminary injunction against entities that complied with IRS' levies, where the "primary purpose [of the motion was] to prevent collection of the taxes that have been assessed"))).

Here, then, it is clear that the proper mechanism for Tatar to assert his claim that the IRS

improperly assessed taxes against him is a refund claim.[5]  *See Enochs*, 370 U.S. at 7 (holding that one purpose of the Anti-Injunction Act is "to require that the legal right to the disputed sums be determined in a suit for refund"); *Tatar*, 2013 WL 4777143, at *1.  For all of these reasons, the Court lacks subject matter jurisdiction to grant injunctive relief restraining the assessment or collection of tax and/or to grant a declaratory judgment relating to federal taxes.  Thus, to the extent Tatar's complaint seeks such relief, it should be dismissed.

        2.     *To the Extent Tatar Seeks a Refund, He Has Satisfied the Jurisdictional Prerequisites for, at Most, Only Tax Year 1996*

To the extent Tatar argues that he is seeking a tax refund – rather than declaratory or injunctive relief – Congress has provided a limited waiver of sovereign immunity for such suits against the United States.  *See* 28 U.S.C. § 1346(a)(1).  However, this waiver "must be construed strictly in favor of the sovereign, … and not enlarge[d]" beyond its express terms.  *Nordic Vill.*, 503 U.S. at 34 (internal citations and quotation marks omitted, bracket in original).

The United States' limited waiver of sovereign immunity in tax refund suits is subject to two jurisdictional prerequisites.  First, the Supreme Court has interpreted Section 1346(a)(1) to require "full payment of the assessment before an income tax refund suit can be maintained in a Federal District Court."  *Flora v. United States*, 362 U.S. 145, 177 (1960)[6]; *see also Nassar v. United States*, 792 F. Supp. 1040, 1045 (E.D. Mich. 1992) (recognizing that, in *Flora*, "the Supreme Court held that a federal district court may not entertain a tax refund suit for a given

---

[5] As set forth below, however, Tatar has met the jurisdictional requirements for a refund claim for – at most – one of the fifteen tax years at issue, and, even for that year, he fails to state a claim for relief.

[6] In his response to Defendant's motion, Tatar agrees that *Flora* stands for the proposition that a "tax must be fully paid before a Citizen can sue the Defendant in court for his Claim(s) for Refund[.]"  (Doc. #10 at 16).  He argues that the Supreme Court simply "made up and manufactured this requirement" (*Id.*); however, he cites no authority permitting this Court to simply disregard *Flora*, and none exists.

year until the taxpayer has paid fully the taxes and penalties assessed for that year"). Second, a taxpayer must file a timely administrative claim with the IRS before filing a refund suit. *See* 26 U.S.C. § 7422(a); *see also Stocker v. United States*, 705 F.3d 225, 229-30 (6th Cir. 2013). A claim for refund must be made by the later of either "3 years from the time the return was filed or 2 years from the time the tax was paid[.]" 26 U.S.C. § 6511(a). If a taxpayer fails to file a refund claim within three years of filing the tax return, then his possible refund is limited to "the portion of the tax paid during the 2 years immediately preceding the filing of the claim." 26 U.S.C. § 6511(b)(2)(B).

The IRS' records, which are attached as exhibits to Defendant's motion to dismiss, conclusively show that Tatar has failed to meet the jurisdictional prerequisites to a refund suit for at least fourteen of the fifteen tax years at issue (all but 1996).[7] Specifically:

- For tax years 1997-1999, Tatar fully paid the assessed taxes and penalties, but failed to file a timely claim for a refund, as the allegedly-filed claims were not made within three years of filing the returns or within two years of making a payment on the liabilities. (Docs. #5-2 at 2, 8; #5-3 at 2; #5-4 at 2). *See* 26 U.S.C. §§ 7422(a), 6511(a).

- For tax years 2000-2006 and 2008, Tatar never fully paid the assessed taxes and penalties; thus, he cannot maintain a suit for refund of any taxes paid for those years. (Docs. #5-5 at 9 (balance owed); 5-6 at 6 (liability transferred to separate account); 5-7 at 3 (balance written off); 5-8 at 6 (balance written off); 5-9 at 5 (balance written off); 5-10 at 7 (balance owed); 5-11 at 6 (balance owed); 5-12 at 7 (balance owed); 5-14 at 5 (balance owed)). *See Flora*, 362 U.S. at 177.

- For tax years 2007, 2009, and 2010, the substitute-for-returns prepared by the IRS

---

[7] In his complaint, Tatar alleges that he filed administrative refund claims with the IRS for tax years 1996-2010. (Doc. #1 at 9). He alleges that these claims were dated February 4, 2016, and received by the IRS on February 10, 2016. (*Id.*). The IRS records do not reflect receipt of such claims. (Doc. #5 at 21 n. 3). Nevertheless, Defendant assumed for purposes of its motion to dismiss that such administrative claims were filed on the date alleged. (*Id.*). In his response, Tatar characterized this assumption as a "fraudulent attack" designed to "trick" this Court into granting Defendant's motion. (Doc. #10 at 10). The Court disagrees, as such an assumption was designed to give Tatar the benefit of the doubt on this issue, and the fact that Tatar filed refund claims for several of the years at issue does not save his complaint from dismissal.

when Tatar failed to file tax returns reflected that he owed no taxes, and so no payments were made for those years. (Docs. #5-13 at 2; 5-15 at 2; 5-16 at 2). In the absence of any tax liabilities or payments for these tax years, there is nothing to be refunded, and any claim for refund is moot.

Faced with this evidence, Tatar seeks to avoid the full-payment rule by objecting to how the IRS allocated levy payments. (Doc. #10 at 14-15). Specifically, Tatar objects to the way in which IRS levies collected "on multiple tax years at the same time," rather than chronologically, by calendar year. (*Id.*). But, the law has no exception to the full-payment rule based on how the IRS allocates payments, and because Tatar's payments were involuntary, he could not direct how they were allocated. *See, e.g., In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (although a taxpayer who makes a voluntary payment to reduce his overall tax liability generally may "designate the particular tax liability to which the payment will be applied," the IRS allocates "involuntary" payments); *United States v. Kraljevich*, 364 F. Supp. 2d 655, 658 (E.D. Mich. 2005) ("A taxpayer cannot designate how an involuntary payment should be applied."). Thus, where the payments Tatar seeks to have refunded were involuntary, the IRS could choose how to apply the payments, and the fact that they were not applied "chronologically," as Tatar would wish, does not save his claims from *Flora's* full-payment requirement.

As set forth above, then, Tatar has failed to establish all of the jurisdictional prerequisites to a refund suit for tax years 1997-2010.[8] Accordingly, the complaint should be dismissed for lack of subject matter jurisdiction to the extent Tatar seeks a refund related to these tax years.

---

[8] The only tax year for which Tatar may have met the jurisdictional prerequisites for a refund suit is tax year 1996. Tatar fully paid the taxes and penalties for that tax year via levy on April 25, 2016. (Doc. #5-1 at 18). He alleges that he filed an administrative claim for refund dated February 4, 2016, which the IRS received on February 10, 2016. (Doc. #1 at 9). This would have been more than three years from when he filed his 1996 tax return in 1997, but within two years of some levy payments. (Doc. #5-1 at 2, 11-18). If Tatar actually filed a claim for refund with the IRS in February 2016, as he alleges, then that claim would be timely as to the levy payments made on and after February 21, 2014. As set forth below, *infra* at 12-14, however, even assuming this is true, Tatar's claim for a refund for 1996 must nevertheless be dismissed.

12

### 3.     *Tatar's Claim for a Refund for Tax Year 1996 Must Be Dismissed*

Defendant also argues that, to the extent Tatar seeks a refund related to tax year 1996 (or any other relief that the Court has not already dismissed on other grounds), the action should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. #5 at 23-26).

A motion to dismiss pursuant to Rule 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In this case, even taking all of Tatar's allegations as true, he can prove no set of facts in support of his refund claim that would entitle him to relief, because the theories advanced in his 114-page "memorandum" have been repeatedly and routinely rejected by courts, including the Supreme Court and the Sixth Circuit.[9]  Specifically, Tatar's "memorandum" appears to advance five primary arguments as to why the federal government cannot tax his income (and, hence,

---

[9] Indeed, in the introduction to his "memorandum," Tatar specifically acknowledges that "prior tribunals" have deemed that document's contents to be "frivolous and/or without merit." (Doc. #1 at 27).

13

why he is purportedly entitled to a refund). As summarized below, however, each of these arguments has been soundly rejected by the courts:

- Tatar argues that his "revenues" from working are not taxable income under the Internal Revenue Code or the Sixteenth Amendment. This is incorrect. *See, e.g.,* U.S. Const., amend. XVI; 26 U.S.C. § 61(a)(1) (defining "gross income" as "all income from whatever source derived, including (but not limited to) the following items: (1) Compensation for services…"); *Coleman v. C.I.R.*, 791 F.2d 68, 70 (7th Cir. 1986) ("These [arguments advanced by Tatar] are tired arguments. The code imposes a tax on all income. *See* 26 U.S.C. § 61. Wages are income, and the tax on wages is constitutional.").

- Tatar argues that only the State of Michigan has taxing authority over his income. Courts have held, however, that the federal government – in addition to a state government – can tax the income of an individual who is a citizen or resident of a state. *See United States v. Mundt*, 29 F.3d 233, 237 (6th Cir. 1994) (finding that defendant's argument that "he is solely a resident of the state of Michigan and not a resident of any 'federal zone' and is therefore not subject to federal income tax laws [] is completely without merit and patently frivolous.").

- Tatar argues that the federal income tax is an improper excise tax that cannot be levied on his income. Courts have rejected this argument, concluding that the federal income tax is not an unauthorized excise tax. *See, e.g., Sawukaytis v. C.I.R.*, 102 F. App'x 29, 33 (6th Cir. 2004) (citing *Martin v. Comm'r.*, 756 F.2d 38, 40 (6th Cir. 1985), which found this argument to be "baseless").

- Tatar argues that the federal government lacks the ability to tax the proceeds of exercising the fundamental right to work. Again, this is incorrect, as courts have held that the federal government can tax salaries or wages that derive from an individual's work. *See, e.g., Funk v. C.I.R.*, 687 F.2d 264, 265 (8th Cir. 1982); *Coleman*, 791 F.2d at 70).

- Tatar argues that some value needs to be attributed to his human capital and subtracted from his income. This argument, too, misapprehends the law. *See Boggs v. C.I.R.*, 569 F.3d 235, 238 (6th Cir. 2009) (rejecting "argument that wages are not completely taxable because they are a return on human capital. This is a variation on an argument repeatedly rejected by courts that wages are not income because they are in equal exchange for labor.") (citing *Sisemore v. United States*, 797 F.2d 268, 270-71 (6th Cir. 1986)).

Tatar does not disagree that the case law is at odds with his arguments; rather, he suggests that "constitutionality can be reexamined." (Doc. #10 at 20). But, while the Supreme Court may reexamine its constitutionality decisions, its existing decisions (and those of the Sixth

14

Circuit) bind this Court unless and until the Supreme Court (or the Sixth Circuit) overrules them. *See State Oil Co. v. Khan,* 522 U.S. 3, 20 (1997) ("it is this Court's prerogative alone to overrule one of its precedents."); *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016). Simply put, where Tatar has based his claim for refund on legal theories that have been routinely and consistently rejected as frivolous, his complaint fails to state a claim upon which relief can be granted and should be dismissed.

### III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss [5] be **GRANTED** and Tatar's claims be dismissed in their entirety and with prejudice.

Dated: July 7, 2017                                         s/David R. Grand
Ann Arbor, Michigan                                    DAVID R. GRAND
                                                                        United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 7, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
